No. 24-40703

# In the United States Court of Appeals for the Fifth Circuit

———————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

v.

GEORGE JIMENEZ,
*Defendant-Appellant*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, NO. 3:19-CR-9 (HON. JEFFREY V. BROWN)

———————————

APPELLEE'S BRIEF FOR THE UNITED STATES OF AMERICA

———————————

NICHOLAS J. GANJEI
   United States Attorney
   Southern District of Texas

MATTHEW R. GALEOTTI
   Head of the Criminal Division

JAVIER A. SINHA
   Attorney, Appellate Section
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Ave. NW,
   Suite 1264
   Washington, DC 20530
   (202) 353-1787
   javier.sinha@usdoj.gov

## STATEMENT REGARDING ORAL ARGUMENT

Although the facts and legal arguments are adequately presented in the briefs and record, the United States does not oppose the defendant's request for oral argument.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ....................................i

TABLE OF AUTHORITIES ....................................................iv

STATEMENT OF JURISDICTION ........................................1

STATEMENT OF THE ISSUES ............................................1

STATEMENT OF THE CASE ...............................................1

    I.    Statement of facts ..................................................2

    II.   Procedural history .................................................5

    III.  Rulings under review ..........................................10

SUMMARY OF ARGUMENT .................................................10

ARGUMENT ...........................................................................11

    SUFFICIENT EVIDENCE SUPPORTS JIMENEZ'S CONVICTION. .............................................................11

    A.   Legal and factual background ....................................12

    B.   Standard of review .....................................................14

    C.   Sufficient evidence supports the district court's finding that Jimenez attempted to persuade, induce, entice, or coerce MV-1 to engage in sexual activity for which any person can be charged with a criminal offense. ......................................15

        1.   The phrase "sexual activity" in Section 2422(b) includes sexual activity without interpersonal contact. .......................................16

        2.   Jimenez's arguments to the contrary are without merit. ....................................................33

        3.   Even if any error exists, any such error was not plain. ..........................................................47

D.  Sufficient evidence supports the district court's finding that Jimenez attempted to persuade, induce, entice, or coerce MV-1 to engage in the lascivious exhibition of her genitals or pubic area......50

1.  The evidence was sufficient to support Jimenez's conviction for attempting to persuade, induce, entice, or coerce MV-1 to engage in the lascivious exhibition of her genitals or pubic area...........................................51

2.  Jimenez's contrary arguments are unpersuasive. ....................................................56

CONCLUSION ........................................................................64

# TABLE OF AUTHORITIES

## Cases

*Ali v. Federal Bureau of Prisons,*
   552 U.S. 214 (2008) ............................................................. 26, 27

*Cargill v. Garland,*
   57 F.4th 447 (5th Cir. 2023) (en banc), *aff'd,*
   602 U.S. 406 (2024) ................................................................. 38

*Claimant ID 100081155 v. BP Expl. & Prod., Inc.,*
   920 F.3d 925 (5th Cir. 2019) ............................................... 35

*DIRECTV, Inc. v. Budden,*
   420 F.3d 521 (5th Cir. 2005) ............................................... 47

*Easom v. US Well Servs., Inc.,*
   37 F.4th 238 (5th Cir. 2022) ............................................... 35

*FCC v. AT&T Inc.,*
   562 U.S. 397 (2011) .......................................................... 34, 35

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.,*
   314 U.S. 95 (1941) ........................................................... 23, 47

*Intel Corp. Inv. Policy Comm. v. Sulyma,*
   589 U.S. 178 (2020) ............................................................... 30

*Maracich v. Spears,*
   570 U.S. 48 (2013) ................................................................ 49

*Nken v. Holder,*
   556 U.S. 418 (2009) ............................................................... 34

*Ocasio v. United States,*
   578 U.S. 282 (2016) ............................................................... 49

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
   572 U.S. 545 (2014) ............................................................... 24

iv

*Puckett v. United States,*
  556 U.S. 129 (2009) ................................................................ 15

*Pulsifer v. United States,*
  601 U.S. 124 (2024) ................................................................ 49

*Robinson v. Shell Oil Co.,*
  519 U.S. 337 (1997) ................................................................ 23

*Sandifer v. United States Steel Corp.,*
  571 U.S. 220 (2014) ................................................................ 24

*Taniguchi v. Kan Pac. Saipan, Ltd.,*
  566 U.S. 560 (2012) ................................................................ 23

*United States v. Age,*
  136 F.4th 193 (5th Cir. 2025) ................................................. 15

*United States v. Arvin,*
  900 F.2d 1385 (9th Cir. 1990) ............................................... 62

*United States v. Barlow,*
  568 F.3d 215 (5th Cir. 2009) ................................................. 57

*United States v. Boam,*
  69 F.4th 601 (9th Cir. 2023), *cert. denied,*
  144 S. Ct. 1345 (2024) ............................................................ 58

*United States v. Boler,*
  115 F.4th 316 (4th Cir. 2024) ............................................... 39

*United States v. Breeding,*
  109 F.3d 308 (6th Cir. 1997) ........................................... 32, 46

*United States v. Broussard,*
  669 F.3d 537 (5th Cir. 2012) ........................................... 48, 52

*United States v. Brown,*
  579 F.3d 672 (6th Cir. 2009) ................................................. 61

*United States v. Chambers,*
642 F.3d 588 (7th Cir. 2011) .............................................................. 54

*United States v. Dige,*
No. 20-40688, 2022 WL 944700 (5th Cir. Mar. 29, 2022) ................. 19

*United States v. Dominguez,*
997 F.3d 1121 (11th Cir. 2021) ................................... 22, 23, 25, 37, 43

*United States v. Dost,*
636 F. Supp. 828 (S.D. Cal. 1986) ................................................. 52, 60

*United States v. Frabizio,*
459 F.3d 80 (1st Cir. 2006) .............................................................. 61

*United States v. Fugit,*
703 F.3d 248 (4th Cir. 2012) .......................... 24, 25, 27, 28, 33, 43, 45

*United States v. Gonzales,*
520 U.S. 1 (1997) ....................................................................... 26, 27

*United States v. Hillie,*
38 F.4th 235 (D.C. Cir. 2022) ...................................................... 59, 63

*United States v. Hillie,*
39 F.4th 674 (D.C. Cir. 2022) .............................................................. 63

*United States v. Howard,*
766 F.3d 414 (5th Cir. 2014) ............................................. 16, 32, 51, 57

*United States v. Huerra,*
884 F.3d 511 (5th Cir. 2018) .............................................................. 17

*United States v. Isabella,*
918 F.3d 816 (10th Cir. 2019) ...................................................... 55, 56

*United States v. Jakits,*
129 F.4th 314 (6th Cir. 2025) ................................................. 22, 23, 43

*United States v. Johnson,*
   639 F.3d 433 (8th Cir. 2011)...........................................................57

*United States v. Larkin,*
   629 F.3d 177 (3d Cir. 2010) ...........................................................61

*United States v. Lee*,
   502 F.3d 447 (6th Cir. 2007) ..........................................................26

*United States v. Lott*,
   53 F.4th 319 (5th Cir. 2022) ...........................................................14

*United States v. Lundy,*
   676 F.3d 444 (5th Cir. 2012) ..........................................................59

*United States v. McDowell*,
   498 F.3d 308 (5th Cir. 2007) ..........................................................17

*United States v. Miller*,
   829 F.3d 519 (7th Cir. 2016) ....................................................60, 63

*United States v. Musumeci,*
   307 F. App'x 471 (2d Cir. 2008)......................................................55

*United States v. Olano*,
   507 U.S. 725 (1993)........................................................................15

*United States v. Olvera,*
   687 F.3d 645 (5th Cir. 2012) ..........................................................51

*United States v. Rao,*
   123 F.4th 270 (5th Cir. 2024) .........................................................17

*United States v. Rivera,*
   546 F.3d 245 (2d Cir. 2008) ...........................................................61

*United States v. Root,*
   296 F.3d 1222 (11th Cir. 2002)........................................................26

*United States v. Rounds,*
   749 F.3d 326 (5th Cir. 2014) ............................................................ 53

*United States v. Ruiz-Gea,*
   340 F.3d 1181 (10th Cir. 2003) ........................................................ 50

*United States v. Russell,*
   662 F.3d 831 (7th Cir. 2011) ............................................................ 62

*United States v. Salinas,*
   480 F.3d 750 (5th Cir. 2007) ............................................................ 49

*United States v. Sanches,*
   86 F.4th 680 (5th Cir. 2023) ...................................................... 47, 50

*United States v. Spoor,*
   904 F.3d 141 (2d Cir. 2018) ............................................................. 61

*United States v. Steen,*
   634 F.3d 822 (5th Cir. 2011) ............................................................ 14

*United States v. Taylor,*
   640 F.3d 255 (7th Cir. 2011) ....................... 20, 21, 22, 34, 43, 44, 46, 49

*United States v. Tello,*
   600 F.3d 1161 (9th Cir. 2010) ......................................................... 26

*United States v. Villard,*
   885 F.2d 117 (3d Cir. 1989) ............................................................. 61

*United States v. Ward,*
   686 F.3d 879 (8th Cir. 2009) ........................................................... 61

*United States v. Weatherton,*
   567 F.3d 149 (5th Cir. 2009) ........................................................... 20

*United States v. Wells,*
   843 F.3d 1251 (10th Cir. 2016) ........................................................ 61

*United States v. Wilkerson,*
    124 F.4th 361 (5th Cir. 2024), *petition for cert. filed,*
    No. 24-7115 (Apr. 29, 2025) ........................................ 51, 53, 60, 62, 63

*United States v. Womack,*
    509 F.2d 368 (D.C. Cir. 1972) ............................................................ 26

*Wesson v. United States,*
    48 F.3d 894 (5th Cir. 1995) .................................................... 31, 32, 46

*Wilson v. Safelite Grp., Inc.,*
    930 F.3d 429 (6th Cir. 2019) ........................................................ 39, 42

*Windland v. Quarterman,*
    578 F.3d 314 (5th Cir. 2009) ............................................................ 20

## Statutes and Rules

18 U.S.C. § 1470 ....................................................................................... 2, 6

18 U.S.C. § 2246 ............................................................................. 28, 44, 45

18 U.S.C. § 2251 .....................................................7, 10, 11, 13, 19, 43, 63

18 U.S.C. § 2252 ........................................................................................... 63

18 U.S.C. § 2256 ................................................................... 7, 8, 13, 51

18 U.S.C. § 2422 ........................2, 6, 12, 15, 18, 26, 37, 40, 46, 56, 57, 61

18 U.S.C. § 2422 (1986) ............................................................................. 29

18 U.S.C. § 2423 ......................................................................................... 45

18 U.S.C. § 2427 ..................................................................... 10, 12, 20, 29

18 U.S.C. § 2427 (1998) ............................................................. 12, 18, 22, 28

18 U.S.C. § 2427 (2023) ........................................................................ 12, 31

18 U.S.C. § 3231 ..............................................................................................1

20 U.S.C. § 7131 ....................................................................... 45

20 U.S.C. § 9134 ....................................................................... 45

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1346 ....................................................................... 45

47 U.S.C. § 254 ........................................................................ 45

Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, 112 Stat. 2974 ...................................................... 29, 30

Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 ..... 29

## Other Authorities

15 Oxford English Dictionary (2d ed. 1989) .......................................... 24

Am. Heritage Dictionary (2000 ed.) ............................................... 24, 25

Black's Law Dictionary (7th ed. 1999) ....................................... 36, 37, 38

H.R. Rep. No. 118-301 (2023) .................................................... 31

Webster's Third New International Dictionary (1993) .......................... 24

Webster's Third New International Dictionary (2002) .............. 24, 25, 27

# STATEMENT OF JURISDICTION

Defendant-appellant George Jimenez appeals from a final judgment of conviction in a criminal case. Final judgment was entered on October 28, 2024, ROA.223-228,[1] and Jimenez timely filed a notice of appeal on October 24, 2024, ROA.221. The district court (Brown, J.) had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

1.      Whether the term "sexual activity" in Section 2422(b) of Title 18, United States Code, encompasses Jimenez's conduct.

2.      Whether sufficient evidence exists that Jimenez attempted to persuade, induce, entice, or coerce MV-1 to engage in the lascivious exhibition of her genitals or pubic area.

# STATEMENT OF THE CASE

Following a bench trial in the United States District Court for the Southern District of Texas, defendant-appellant George Jimenez was convicted of coercing or enticing a minor, in violation of 18 U.S.C.

---

[1] "ROA." refers to the Record on Appeal. "Br." refers to Jimenez's initial brief. "Amicus Br." refers to the amicus brief of Neal Goldfarb.

§ 2422(b) (Count 1). ROA.170, 223. Jimenez additionally pleaded guilty to two counts of transferring obscene material to a minor, in violation of 18 U.S.C. § 1470 (Counts 3-4). ROA.223, 333. He was sentenced to 240 months of imprisonment, to be followed by ten years of supervised release. ROA.224-225.

## I.    Statement of facts[2]

In 2019, Jimenez, using a cell phone with an application that disguised his phone number, sent sexually-explicit messages and photos of his penis to several minors, including Minor Victim 1 ("MV-1") and Minor Victim 2 ("MV-2"). ROA.158-159, 163.

A.    Beginning March 6, 2019, as relevant to Counts 1 and 3, Jimenez began texting MV-1 while pretending to be a 13-year-old boy. ROA.156, 159-160.

To initiate the conversation, Jimenez messaged MV-1, "You ready for this cock pic." ROA.160. MV-1 responded "Hell no," and informed Jimenez that she was a minor. ROA.160. Undeterred, over the course of the next six weeks, Jimenez "conducted graphic sexual conversations

---

[2] This brief discusses the facts of this case at a level of generality sufficient to anonymize the minor victims.

with" MV-1. ROA.160. Jimenez sent MV-1 a picture of his penis and told her, "I wish I could have seen your nipples during that time." ROA.156. A few days later, Jimenez "sent another picture of his penis and made multiple requests for pictures of [MV-1's] breasts." ROA.157. Jimenez told MV-1, "After being hard like I am I need to release." ROA.161. He also told MV-1, "ur going to help me . . . [c]um," noting, "I do want to see ur boobies. That will defiantly [sic] help." ROA.161. He similarly told MV-1, "I need to cum so bad babe," and asked her, "tease me with a picture of something so I can cum." ROA.161. Jimenez also indicated to MV-1 that he wanted to have sex with her, asking her, "where do you want my cock to go in" and "you want it in your sweet little pussy or in that juic[y] ass." ROA.160.

At one point, Jimenez told MV-1 that he had recently shaved his pubic area. ROA.160. MV-1 then sent a message to Jimenez stating, "I shave there all the time." ROA.157. "Jimenez immediately requested, 'I have to see that . . . Babe plz. Just the top half.'" ROA.157. MV-1 responded, "Not right now." ROA.157. Jimenez, however, asked again, telling MV-1, "I want to see the shaved pic, lol." ROA.157.

"Jimenez then twice more requested the 'shaved pic.'" ROA.157. When MV-1 responded to one of Jimenez's sexual messages by saying that it "was making her wet," ROA.160, Jimenez responded, "Babe I want to see it so bad," ROA.160. MV-1 instead offered to "make a deal" with Jimenez: she told him, "If you [calm] down and give me some time I'll send you a pic of me with no shirt and just wearing a bra." ROA.157. Jimenez accepted the "deal," but he "quickly added, 'But how about the pubic part too. That you shave . . . its [sic] got to look amazing.'" ROA.157. In response to some of his requests, MV-1 sent Jimenez several clothed pictures of herself. ROA.157, 161, 169. But despite his repeated requests, MV-1 never sent Jimenez a picture of her pubic area. ROA.161, 319.

Some time later, MV-1 was interviewed at the Children's Advocacy Center. ROA.161. When asked if the person sending her messages from Jimenez's phone number "asked her for pictures of herself," MV-1 stated, "'Yes, all the time. He was like "can you show me a picture of your chest or your private area?"'" ROA.161. MV-1 also stated, "He sent pictures of his private parts one to five times. He wanted to see my chest, my private parts." ROA.161. And when asked about Jimenez's message that stated, "I want to see the shaved pic," MV-1 explained, "I shave my lower half

because it's more comfortable for me, and he wanted to see it." ROA.161-162.

B.      Beginning March 30, 2019, as relevant to Count 4, Jimenez began texting with MV-2, another minor. ROA.162.

Jimenez told MV-2 that he was a 14-year-old boy, that he had mistakenly texted MV-2's phone, and that "he had meant to text another friend." ROA.162. Jimenez then told MV-2 that "he was going to send another friend a 'cock pic'" and asked MV-2 if MV-2 would judge it. ROA.162. Jimenez then sent two pictures of his penis to MV-2. ROA.162.

In addition to sending MV-2 pictures of his penis, Jimenez engaged MV-2 in a sexually-explicit conversation. ROA.162. He, for example, told MV-2 that he would, "[F]uck you harder, . . . and play[] with ur nipples." ROA.162. And Jimenez asked MV-2, "[C]an you suck it for a little while so I can cum?" ROA.162. During the sexual conversation, Jimenez indicated to MV-2, "I wish I had a visual." ROA.162.

## II.    Procedural history

A.      In April 2019, the FBI received information that Jimenez had sent "sexually explicit messages," including pictures of his penis, to several minors. ROA.155, 158-159; *see also* ROA.252-253. The FBI

investigated Jimenez and obtained a warrant-authorized extraction of his phone. ROA.156.

A grand jury sitting in the United States District Court for the Southern District of Texas charged Jimenez with two counts of knowingly using a facility and means of interstate commerce to persuade, induce, entice, and coerce an individual, who had not attained the age of 18 years, to engage in prostitution and any sexual activity for which any person can be charged with a criminal offense, and attempting to do so, in violation of 18 U.S.C. § 2422(b) (Counts 1-2); and five counts of transferring obscenity to a minor, in violation of 18 U.S.C. § 1470 (Counts 3-7). ROA.30-33. As relevant here, Count 1 charged Jimenez with persuading, inducing, enticing, and coercing MV-1, or attempting to do so; Counts 3 and 4 charged Jimenez with transferring obscenity to MV-1 and MV-2, respectively. ROA.30-32.

B.    Jimenez pleaded guilty to Counts 3 and 4. *See* ROA.324-333. Jimenez, however, proceeded to a bench trial on Count 1. *See generally* ROA.239-324. At that bench trial, the parties filed stipulated facts, *see* ROA.158-163; *see also* ROA.155, and the government introduced fourteen exhibits, *see* ROA.241. The government called Special Agent

Laura Brunstetter, who testified regarding the facts described above. *See* ROA.155-158; *see generally* ROA.251-297.

C.    The district court found Jimenez guilty on Count 1. ROA.154-170.

The district court found the facts described above. *See* pp.2-5, *supra*. The court explained that "Count One alleges Jimenez attempted to 'persuade, induce, entice, and coerce' a minor to 'engage in sexual activity for which the defendant could be charged with a criminal offense, specifically, sexual exploitation of children pursuant to 18 United States Code, Section 2251(a) and (e).'" ROA.164. The court then explained that Section 2251(a), in turn, prohibits "employ[ing], us[ing], persuad[ing], induc[ing], entic[ing], or coerc[ing] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct," ROA.165 (quoting 18 U.S.C. § 2251(a)), and additionally explained that "'sexually explicit conduct'" was defined as "actual or simulated . . . 'lascivious exhibition of the anus, genitals, or pubic area of any person,'" ROA.165 (quoting 18 U.S.C. § 2256(2)(A)).

The district court then laid out the elements of a Section 2422(b) violation. ROA.166. The district court noted that, "in most cases," the "'sexual activity for which any person can be charged with a criminal offense'" prohibited by Section 2422(b) "involves physical sexual contact with a minor." ROA.167. But the court recognized that, "[i]n this case, the alleged underlying criminal offense is different" because "[t]he [g]overnment does not allege Jimenez induced [MV-1] to engage in direct sexual *contact*, but rather alleges he induced [MV-1] to produce a visual depiction of sexually explicit conduct." ROA.167. The district court thus noted that the inquiry in this case was "whether Jimenez persuaded, induced, enticed, or coerced [MV-1] to engage in 'lascivious exhibition of the anus, genitals, or pubic area of any person.'" ROA.168 (quoting 18 U.S.C. § 2256(2)(A)(v)).

The court then found that "the [g]overnment has proven beyond a reasonable doubt that Jimenez persuaded, induced, enticed, or coerced [MV-1] to engage in lascivious exhibition of her genitals or pubic area." ROA.168. In support, the court noted that "Jimenez directly and repeatedly requested that [MV-1] send pictures of [MV-1's] pubic area": among other examples, "[a]fter learning that [MV-1] had shaved her

pubic area, Jimenez immediately responded, 'I have to see that . . . Babe plz. Just the top half,'" and "[a]fter [MV-1] conceded to sending a clothed picture of herself, Jimenez renewed his request with specificity, asking about 'the pubic part too. That you shave . . . its [sic] got to look amazing.'" ROA.168.

The court rejected Jimenez's argument that "these messages were merely an 'expression of his desire[s].'" ROA.169. As the court explained, "the ongoing and reciprocal exchange of pictures between Jimenez and [MV-1] belies this argument": "By the time Jimenez initially requested the 'shaved pic,' he had already sent five pictures of his penis to [MV-1 a]nd [MV-1] had sent at least eight pictures of herself back to Jimenez, most of which were sent at Jimenez's direct request." ROA.169. Thus, "[e]ach time Jimenez unambiguously requested a picture of [MV-1's] genitals, he knew that [MV-1] might take action towards completing the request"; therefore, "Jimenez's requests were direct attempts to persuade, induce, entice, or coerce [MV-1] to engage in 'lascivious exhibition of the anus, genitals, or pubic area' for the 'purpose of producing any visual depiction' of the same." ROA.169.

D.     The district court held a sentencing hearing, during which the government dismissed all remaining counts. ROA.373. The district court sentenced Jimenez to a total of 240 months' imprisonment, to be followed by ten years of supervised release. ROA.224-225, 368.

## III.    Rulings under review

Jimenez challenges the district court's denial of his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. ROA.312-313.

## SUMMARY OF ARGUMENT

1.     Sufficient evidence supports the district court's finding that Jimenez's conduct falls within the meaning of the phrase "any sexual activity" in Section 2422(b). Jimenez cannot show any error—plain or otherwise. First, Jimenez's conduct falls within the meaning of the phrase. The phrase sexual activity is partially defined by 18 U.S.C. § 2427 to include the production of child pornography. And the "sexual activity" underlying Jimenez's Section 2422(b) offense was a violation of 18 U.S.C. § 2251(a) & (e), which generally prohibits using or enticing a minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct. Second, Section 2427's partial definition of the phrase sexual activity as well as other

interpretive indicators—including the definitions of the words "any," "sexual," and "activity," as well the statute's context and history—belie Jimenez's claim that "any sexual activity" requires interpersonal contact.

2. The evidence here was more than sufficient to show that Jimenez took a substantial step towards seeking to convince MV-1 to send him a lascivious image of her shaved genitals or pubic area. That evidence includes the fact that Jimenez engaged in a lengthy and sexually explicit conversation with MV-1, sent MV-1 several images of his penis, and repeatedly requested that MV-1 send pictures of her shaved pubic area so that he could achieve sexual satisfaction.

## ARGUMENT

## SUFFICIENT EVIDENCE SUPPORTS JIMENEZ'S CONVICTION.

Jimenez contends (Br.11-39) that the evidence did not sufficiently prove the element in 18 U.S.C. § 2422(b) relating to "sexual activity" because his conduct did not involve interpersonal contact, and he further contends (Br.40-61) that the images he attempted to have MV-1 produce would not have qualified as the lascivious exhibition of MV-1's genitals or pubic area under 18 U.S.C. § 2251. Both claims are without merit.

## A.    Legal and factual background

1.    Count 1 charged Jimenez with violating 18 U.S.C. § 2422(b). Section 2422(b), in relevant part, prohibits "using the mail or any facility or means of interstate or foreign commerce, . . . [to] knowingly persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempt[ing] to do so." 18 U.S.C. § 2422(b).

The phrase "sexual activity for which any person can be charged with a criminal offense" is partially defined in 18 U.S.C. § 2427, which, as in effect at the time Jimenez committed the crime charged, explains that, for the purposes of the chapter that includes Section 2422, "the term 'sexual activity for which any person can be charged with a criminal offense' includes the production of child pornography, as defined in section 2256(8)." 18 U.S.C. § 2427 (1998).[3] Section 2256, in turn, defines "child pornography" as including, among other things, "any visual

_____

[3] Section 2427 was amended in 2023 and now reads as follows: "In this chapter, the term 'sexual activity for which any person can be charged with a criminal offense' does not require interpersonal physical contact, and includes the production of child pornography, as defined in section 2256(8)." 18 U.S.C. § 2427 (2023).

depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture . . . where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(A).

The relevant criminal offense underlying the Section 2422(b) count was 18 U.S.C. § 2251(a) & (e), which establishes criminal penalties for any person who "employs, uses, persuades, induces, entices, or coerces any minor to engage in, . . . with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," or attempts to do so. The term "sexually explicit conduct" is defined to include, as relevant here, "actual or simulated . . . lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v).

2.     Jimenez proceeded to a bench trial on Count 1, and after the government rested, Jimenez moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. *See* ROA.312. Jimenez asserted that "it's not enough to have sexual conversations with somebody and it's not enough to send photographs of yourself or genitals to minors to sustain a conviction under these circumstances" and that "most of the[]"

13

conversations Jimenez had with MV-1 "don't actually touch on a lascivious display of the genitals or the anus or the pubic area." ROA.312-313. Jimenez thus argued that "a substantial step . . . has not been taken under these circumstances." ROA.313.

The district court denied the motion. ROA.313.

## B.    Standard of review

1.    When a defendant challenges the sufficiency of the evidence after a bench trial, this Court will "review the district court's findings of fact for substantial evidence." *United States v. Lott*, 53 F.4th 319, 322 (5th Cir. 2022). This Court will affirm if there is "evidence sufficient to justify the trial judge, as the trier of fact, in concluding beyond a reasonable doubt that the defendant is guilty." *Id.* (quotations omitted). In reviewing the evidence, this Court will "view all evidence in the light most favorable to the government and defer to all reasonable inferences drawn by the trial court." *Id.* (quotations omitted).

This Court will review a finding that an image contains the lascivious exhibition of the genitals or pubic area for clear error. *United States v. Steen*, 634 F.3d 822, 825-26 (5th Cir. 2011).

2. When a defendant fails to object to an alleged error in the district court, however, he may not obtain appellate relief based on that error unless he establishes reversible "plain error." *See Puckett v. United States*, 556 U.S. 129, 134-35 (2009). To establish reversible plain error, a defendant must demonstrate (1) error; (2) that is plain or obvious; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-36 (1993). When reviewing a sufficiency claim for plain error, this Court will reverse "only if there is a *manifest* miscarriage of justice[,] which exists only if the record is devoid of evidence pointing to guilt, or . . . because the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *United States v. Age*, 136 F.4th 193, 213 (5th Cir. 2025) (footnote and quotations omitted).

**C.  Sufficient evidence supports the district court's finding that Jimenez attempted to persuade, induce, entice, or coerce MV-1 to engage in sexual activity for which any person can be charged with a criminal offense.**

Jimenez contends (Br.11-39) that there is insufficient evidence supporting his conviction because the phrase "sexual activity" in 18 U.S.C. § 2422(b) requires interpersonal physical contact but the "sexual

activity" at issue here—the lascivious exhibition of MV-1's genitals or pubic area—did not involve such contact. That contention lacks merit.

      1.    The phrase "sexual activity" in Section 2422(b) includes sexual activity without interpersonal contact.

a.    Jimenez's claim should be reviewed only for plain error.

As an initial matter, Jimenez's claim that the evidence here is insufficient because the phrase "sexual activity" encompasses only conduct that requires interpersonal physical contact should be reviewed only for plain error. Although Jimenez moved for a judgment of acquittal at trial, he merely argued, as relevant here, that his conduct did not constitute a substantial step toward the commission of the crime because "it's not enough to have sexual conversations with somebody and it's not enough to send photographs of yourself or genitals to minors to sustain a conviction under these circumstances." ROA.312. In doing so, he cited to *United States v. Howard*, 766 F.3d 414 (5th Cir. 2014), ROA.312, which noted "that grooming behavior plus other acts strongly corroborative of intent to entice illegal sex . . . can suffice to establish a substantial step under § 2422(b)," *Howard*, 766 F.3d at 425.

"To preserve *de novo* review, however, a defendant must specify at trial the particular basis on which acquittal is sought so that the

[g]overnment and district court are provided notice." *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007). And "where the defendant asserts specific grounds for a specific element of a specific count in his motion for judgment of acquittal . . . , the defendant fails to preserve any other grounds." *United States v. Rao*, 123 F.4th 270, 276 (5th Cir. 2024) (quotations omitted). Here, Jimenez did not argue that the phrase sexual activity required interpersonal physical contact and that he therefore did not attempt to convince MV-1 to engage in sexual activity. Instead, he argued only that his conduct did not rise to the level of a "substantial step" as this Court described it in *Howard*. Jimenez's argument before the district court regarding what conduct was sufficient for a finding that he engaged in a substantial step toward the completion of the crime did not provide the court with sufficient notice of the argument that he now raises on appeal: that the phrase sexual activity in Section 2422(b) requires interpersonal physical contact. *See United States v. Huerra*, 884 F.3d 511, 519 (5th Cir. 2018) (reviewing for plain error where the defendant "did not fully apprise the district court of the grounds for his objection"). For this reason, Jimenez's argument should be reviewed only for plain error.

b.     Regardless, under any standard of review, there was no error here. Jimenez's conduct falls within the meaning of the phrase "any sexual activity" in Section 2422(b), particularly as elucidated by the partial definition of that phrase in Section 2427.

Section 2422(b), in relevant part, prohibits persuading, inducing, enticing, or coercing a minor "to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempt[ing] to do so." 18 U.S.C. § 2422(b). At the time of Jimenez's conduct, 18 U.S.C. § 2427—which is located in Chapter 117 of Title 18 of the U.S. Code, where § 2422(b) is also located—stated that "[i]n this chapter, the term 'sexual activity for which any person can be charged with a criminal offense' includes the production of child pornography, as defined in section 2256(8)." 18 U.S.C. § 2427 (1998). Accordingly, Section 2422(b) clearly prohibits attempting to persuade a minor to engage in the production of child pornography.

The indictment here charged Sections 2251(a) and (e) as the "sexual activity" underlying Jimenez's Section 2422(b) offense. Section 2251(a), commonly referred to as a statute prohibiting the production of child pornography, establishes criminal penalties for any person who "employs,

uses, persuades, induces, entices, or coerces any minor to engage in, . . .
any sexually explicit conduct for the purpose of producing any visual
depiction of such conduct." Section 2251(e) prohibits attempts to violate
Section 2251(a).

Here, therefore, the conduct in which Jimenez was attempting to
persuade, induce, entice, or coerce MV-1 to engage—to take a photo of her
genitals or pubic area—fits comfortably within Section 2427's partial
definition of the phrase "sexual activity" as including the production of
child pornography.[4] *See United States v. Dige*, No. 20-40688, 2022 WL
944700, at *1 n.1 (5th Cir. Mar. 29, 2022) (per curiam) (unpublished)
(discussing 18 U.S.C. § 2427 and noting that "18 U.S.C. § 2251(a) is a
statute addressing child pornography").[5] Even if the phrase "sexual

---

[4] Jimenez sometimes suggests that the relevant sexual activity in
this case is his conversation attempting to convince MV-1 to send Jimenez
a photo of her shaved pubic region. Br.17, 27-28, 38. That is incorrect.
The relevant sexual activity for Section 2422(b) is the activity in which
Jimenez seeks to convince the minor to engage, not the activity in which
Jimenez engages. The sexual activity at issue here, therefore, would have
been MV-1 sending Jimenez a picture of her shaved pubic area, as he
requested.

[5] Any unpublished opinion referenced in this brief is not offered as
precedent, but is instead cited as an "example of . . . past practice" with
regard to issues raised in this appeal, *Windland v. Quarterman*, 578 F.3d

activity" includes no other contactless conduct, as Jimenez contends, *see* Br.12, it at the very least includes the production of child pornography, under which Jimenez's conduct falls.

Jimenez contends that the Seventh Circuit's decision in *United States v. Taylor*, 640 F.3d 255 (7th Cir. 2011), supports his position. Br.33-34. He is mistaken. *Taylor* involved a defendant who "masturbated in front of his webcam" while communicating with an undercover officer he believed to be a 13-year-old girl. *Taylor*, 640 F.3d at 257. Although the Seventh Circuit in that context stated that "sexual activity" in Section 2422(b) requires interpersonal physical contact, the court also acknowledged that the phrase "sexual activity . . . include[s] producing child pornography" and that "the creation of pornography doesn't involve contact between the pornographer and another person." *Id.* at 259 (citing 18 U.S.C. § 2427). Even *Taylor* recognized, therefore, that the phrase "sexual activity," as defined in Section 2427, includes at least one category of contactless conduct: the production of child pornography. Jimenez's reliance on *Taylor* is thus misplaced because Jimenez engaged

_____

314, 317 n.4 (5th Cir. 2009), and "as persuasive authority," *United States v. Weatherton*, 567 F.3d 149, 153 n.2 (5th Cir. 2009).

in the production of child pornography and even *Taylor* agrees that production of child pornography—regardless of whether such production requires physical contact—is encompassed within the meaning of sexual activity. *Id.*

Given that Jimenez sought to persuade, induce, entice, or coerce MV-1 to create an image of the lascivious exhibition of her genitals or pubic area, in violation of Section 2251(a) & (e), *see* pp.50-64, *infra*, which is properly considered the production of child pornography under Section 2427, Jimenez's contention lacks merit. Jimenez's contactless conduct falls within the meaning of "sexual activity" as partially defined by Section 2427 regardless of whether any *other* contactless conduct also falls within the meaning of the phrase.

c. In any event, even if there is some daylight between the "production of child pornography," which is clearly "any sexual activity" within the meaning of Section 2422, and the charged offense conduct prohibited by Section 2251(a) and (e), the term "any sexual activity" should be interpreted to encompass Jimenez's conduct here. Section 2427's partial definition of "sexual activity" as well as other interpretive

indicators belie Jimenez's claim that "any sexual activity" requires interpersonal contact.

i.    The partial definition of "sexual activity" shows that the term does not require interpersonal physical contact.

As noted, Section 2427 expressly provides that "the term 'sexual activity for which any person can be charged with a criminal offense' includes the production of child pornography, as defined in section 2256(8)." 18 U.S.C. § 2427 (1998). There is no dispute that the production of child pornography "can be accomplished without interpersonal physical contact between the offender and the victim." *United States v. Dominguez*, 997 F.3d 1121, 1125 (11th Cir. 2021); *see also United States v. Jakits*, 129 F.4th 314, 327 (6th Cir. 2025); *Taylor*, 640 F.3d at 259; *see generally* 18 U.S.C. § 2256(2), (8). By providing that production of child pornography—which does not require interpersonal physical contact—can constitute "sexual activity" within the meaning of Section 2422(b), the statute makes clear that the meaning of the term "sexual activity" is not limited to conduct requiring interpersonal physical contact. *See Dominguez*, 997 F.3d at 1125.

Indeed, Section 2427 does not attempt to fully define the meaning of "sexual activity," but merely partially defines it by noting that it "includes" the production of child pornography, which does not require interpersonal contact; it thus "connotes simply an illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941); *see also Dominguez*, 997 F.3d at 1125. Given the inclusive language in Section 2427, "restricting the meaning of 18 U.S.C. § 2422(b) to sexual activity requiring interpersonal physical contact would contravene the express statutory text." *Jakits*, 129 F.4th at 327.

ii.    The plain meaning of "any sexual activity" confirms that the phrase "any sexual activity" encompasses a variety of sexual conduct that does not require physical contact.

The partially defined term "sexual activity" must be given its "ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). And it must be read in context. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "[I]n all statutory construction, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Octane Fitness, LLC v. ICON Health*

*& Fitness, Inc.*, 572 U.S. 545, 553 (2014) (brackets and quotations omitted); *see Sandifer v. United States Steel Corp.*, 571 U.S. 220, 227 (2014) (describing this rule as a "fundamental canon of statutory construction" (quotations omitted)). The ordinary meaning of a statutory term can typically be determined by reference to its dictionary definition. *See, e.g.*, *Octane Fitness*, 572 U.S. at 553.

Here, the ordinary meaning of Section 2422(b)'s key phrase— "sexual activity"—is plain and unambiguous. *See United States v. Fugit*, 703 F.3d 248, 254 (4th Cir. 2012) ("We think the meaning of 'sexual activity' in § 2422(b) is indeed plain and that this meaning extends beyond interpersonal physical contact."). The phrase "sexual activity" was added to Section 2422(b) in 1998, and the 1993 and 2002 editions of Webster's Third New International Dictionary define "sexual" in part as "of or relating to the sphere of behavior associated with libidinal gratification." Webster's Third New International Dictionary 2082 (1993 & 2002 eds.); *see also* Am. Heritage Dictionary 1596 (2000 ed.) (defining "sexual" in relevant part, as "[i]mplying or symbolizing erotic desires or activity" and "[r]elating to, produced by, or involving reproduction"); 15 Oxford English Dictionary 115 (2d ed. 1989) (defining sexual as

"[r]elative to the physical intercourse between the sexes or the gratification of sexual appetites"). The term "activity" as used during this time simply referred to "the quality or state of being active." Webster's Third New International Dictionary 22 (2002); *see also* Am. Heritage Dictionary 17-18 (2000 ed.) (defining activity as "[t]he state of being active," "[e]nergetic action or movement," or "[a] specified pursuit in which a person partakes").

The phrase "sexual activity" therefore plainly encompasses conduct not requiring interpersonal contact. *See Fugit*, 703 F.3d at 255 (explaining that "the phrase 'sexual activity' as used in § 2422(b) comprises conduct connected with the 'active pursuit of libidinal gratification'" and "[t]he fact that such conduct need not involve interpersonal physical contact is self-evident"); *Dominguez*, 997 F.3d at 1125 ("When we combine these understandings of 'sexual' and 'activity,' we conclude that the ordinary public meaning of 'sexual activity' around 1998 was an action or pursuit relating to intercourse *or* to the desire for sex or carnal pleasure.").

Indeed, numerous courts have used the phrase "sexual activity" to include conduct not involving interpersonal contact such as

masturbation. *See, e.g.*, *United States v. Lee*, 502 F.3d 447, 448 (6th Cir. 2007) ("Lee spoke with the agent about engaging in sexual activity with her, specifically oral sex and masturbation."); *United States v. Root*, 296 F.3d 1222, 1235 (11th Cir. 2002) ("[I]n his messages, [the defendant] described a variety of sexual activities in detail to her—including masturbation . . . ."); *United States v. Tello*, 600 F.3d 1161, 1163 (9th Cir. 2010) ("Tello brought up sexual topics and discussed various sexual activity that he wanted to engage in with Cutelagrl93, including oral sex, sexual intercourse, and masturbation."); *United States v. Womack*, 509 F.2d 368, 372 n.4 (D.C. Cir. 1972) (describing "such diverse sexual activities as fellatio, anal sodomy and masturbation").

The plain text of Section 2422(b), moreover, prohibits a defendant from persuading, inducing, enticing, or coercing a minor to engage in "any sexual activity." Section 2422(b)'s reference to "*any*" sexual activity confirms that the provision covers all such activity, and not merely a subset of activity that requires physical contact. 18 U.S.C. § 2422(b) (emphasis added). Courts have recognized that "any" has an "expansive meaning." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 218-20 (2008); *see, e.g.*, *United States v. Gonzales*, 520 U.S. 1, 5 (1997). The plain

meaning of "any" is "one or some indiscriminately of whatever kind," or "one, no matter what one, . . . without restriction or limitation of choice." Webster's Third New International Dictionary 97 (2002); *see also Gonzales*, 520 U.S. at 5. The use of "any," therefore, leaves "no basis in the text for limiting the [statutory] phrase." *Ali*, 552 U.S. at 219 (quotations omitted). Because Congress did not add language limiting the breadth of "any," Section 2422(b) is properly read as referring to all sexual activity of whatever kind: both sexual activity that involves interpersonal physical contact and sexual activity that does not.

"The statute is simply not framed in the terms for which [Jimenez] contends: it mentions nothing about physical contact." *Fugit*, 703 F.3d at 254. Instead, the plain text partially defines the phrase to broadly include conduct that does not require interpersonal physical contact. Jimenez's contention, therefore, lacks merit.

iii.    The context of Chapter 117 and Section 2422(b) reinforces the plain meaning of "sexual activity" as including sexual conduct that does not require interpersonal physical contact.

Reading "sexual activity" to include conduct not requiring physical contact is consistent with Congress's use of other statutory terms.

"[W]here similar statutory terms were meant to encompass only a specific subset of conduct, Congress took care to define them explicitly for purposes of the sections or chapters in which they are found." *Fugit*, 703 F.3d at 254. For example, 18 U.S.C. § 2246(2) defines "sexual act" as, among other things, "contact between the penis and the vulva or the penis and the anus," and "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(A), (C). Similarly, 18 U.S.C. § 2246(3) defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

Given that Congress specifically provided narrow definitions of broad statutory terms in other contexts related to sexual abuse, Congress's decision to leave the broad phrase "sexual activity" largely undefined—and, indeed, to clarify that it does not exclude all non-physical conduct, *see* 18 U.S.C. § 2427 (1998)—shows that "sexual

activity" should not be narrowly construed as limited to only conduct that requires physical contact.

iv.     Reading the term "sexual activity" to include conduct that does not require interpersonal physical contact is also consistent with the statute's history.

Before 1996, Section 2422 criminalized only the attempt to coerce or entice anyone, including a minor, to travel in interstate or foreign commerce to engage "in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422 (1986). Congress revised Section 2422 in 1996 by adding subsection (b), which prohibited coercing and enticing minors to engage in a "sexual act" through the use of telecommunication devices, while the prohibition in subsection (a) continued to apply to "sexual activity." *See* Telecommunications Act of 1996, Pub. L. No. 104-104, § 508, 110 Stat. 56, 137. In 1998, Congress passed the Protection of Children from Sexual Predators Act of 1998, which replaced the term "sexual act" in Section 2422(b) with "sexual activity." Pub. L. No. 105-314, § 102, 112 Stat. 2974, 2976. That Act, moreover, also enacted 18 U.S.C. § 2427, which provides

that the phrase sexual activity in § 2422(b), among other statutes, includes the production of child pornography. *Id.* § 105, 112 Stat. at 2977.

Even if the phrase "sexual act" in the prior version of Section 2422(b) were ever meant to include only conduct involving interpersonal physical contact (a question the Court need not decide), such a limitation on Section 2422(b) would no longer be tenable after Congress's amendment in 1998. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 589 U.S. 178, 189 (2020) (quotations omitted). Congress amended the statute not only to change the phrase "sexual act" to "sexual activity," but in that same Act Congress also clarified that the phrase "includes the production of child pornography." Pub. L. No. 105-314, § 105, 112 Stat. at 2977. Given that producing child pornography does not require physical contact and given that the statute uses the word "includes," *see* pp.22-23, *supra*, the statutory history confirms that the phrase "sexual activity" applies to other contactless conduct.

In 2023, moreover, Congress amended Section 2427 to clarify that "the term 'sexual activity for which any person can be charged with a

criminal offense' does not require interpersonal physical contact." 18 U.S.C. § 2427 (2023). At the time of the 2023 amendment, the Seventh Circuit in *Taylor*, while recognizing that "sexual activity" in Section 2422(b) encompassed the production of child pornography, had nonetheless narrowly interpreted that phrase outside the context of the production of child pornography to require interpersonal physical contact (and therefore not include masturbation). Congress amended Section 2427 to correct the Seventh Circuit's misunderstanding. The House Report accompanying the legislation stated that "[c]hild sexual abuse does not require physical contact," but that "a decision of the United States Court of Appeals for the Seventh Circuit found the use of a webcam to engage in sexually provocative activity with a minor did not qualify as 'sexual activity.'" *See* H.R. Rep. No. 118-301, at 814 (2023). The report commented that "Congress can address this issue by amending the definition of the term 'sexual activity' to clarify that it does not require interpersonal, physical contact." *Id.*

"Congress may amend a statute simply to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases." *Wesson v. United States*, 48 F.3d 894, 901 (5th Cir. 1995) (quotations

omitted). Thus, "an amendment to a statute does not necessarily indicate that the unamended statute means the opposite." *United States v. Breeding*, 109 F.3d 308, 311 (6th Cir. 1997) (quotations omitted). Here, given the plain text, context, and history of the statute, along with the statements in the legislative history, "[t]he more plausible interpretation of the amendment is that the [Seventh Circuit's *Taylor*] case was wrongly decided and Congress acted to correct it." *Wesson*, 48 F.3d at 901.

v.    Reading the term "sexual activity" to include conduct not requiring interpersonal physical contact also comports with the statutory scheme and renders that scheme coherent.

This Court has recognized that Congress drafted Section 2422(b) to "criminalize[] an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions vis-à-vis the actual consummation of sexual activities with the minor." *Howard*, 766 F.3d at 420 (quotations omitted). Because Section 2422(b) was designed to protect children from the act of solicitation itself, "[t]he primary evil that Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children, and this evil can surely obtain in situations

32

where the contemplated conduct does not involve interpersonal physical contact." *Fugit*, 703 F.3d at 255.

> 2.    Jimenez's arguments to the contrary are without merit.

Jimenez's contrary arguments fail primarily because he has failed to meaningfully address the partial definition of the phrase "sexual activity" in Section 2427. *See* Br.38-39. Because Jimenez has not considered the plain text of Section 2427 and the fact that Congress defined the phrase sexual activity to include Jimenez's conduct—and, more generally, conduct that does not require interpersonal physical contact—Jimenez's assertion is based on a misunderstanding of that phrase and is contrary to the text of Sections 2422(b) and 2427. He also fails to give sufficient weight to Congress's inclusion of the expansive term "any" preceding "sexual activity," which likewise supports a broad interpretation to include Jimenez's charged conduct.

In any event, Jimenez's arguments lack merit. First, Jimenez and amicus suggest that because this Court must interpret the meaning of a phrase, dictionary definitions are unhelpful here. But such a contention is contrary to this Court's precedent and Supreme Court precedent. Second, in arguing that the term "sexual activity" in Section 2422(b)

requires interpersonal physical contact, Jimenez relies on three sources: Black's Law Dictionary, corpus linguistics and other internet data, and *Taylor*, 640 F.3d 255. Br.17-37. None supports his argument.

a. Jimenez and amicus contend that the phrase "sexual activity" must be considered as a textual unit. Br.12-17; Amicus Br.5-9. The government agrees. Interpreting "sexual activity" as a textual unit is simply a specific application of the general rule that the meaning of any language in a statute "turns on 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009). This includes interpreting not only the words "sexual" and "activity," but the word "any," which precedes them. *See* pp.23-27, *supra*.

Jimenez and amicus further argue, however, citing *FCC v. AT&T Inc.*, 562 U.S. 397 (2011), that because the phrase "sexual activity" is a textual unit, use of dictionary definitions of the individual words in that unit is unhelpful. Br.12-17; Amicus Br.9-12. Jimenez and amicus are mistaken. The Court in *AT&T*, interpreting the phrase "personal privacy," recognized that "two words together may assume a more particular meaning than those words in isolation." 562 U.S. at 406. But

the Court still found the dictionary definition of "personal" helpful in determining the meaning of the statute. *Id.* at 403-04. And the Court additionally recognized that to determine the meaning of a phrase, it must look to "the statutory text," as well as "the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 407 (quotations omitted).

This Court has similarly explained that, although it will "not make a fortress out of the dictionary," *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 242 (5th Cir. 2022) (quotations omitted), "[d]ictionaries . . . are helpful resources in ascertaining a term's generally prevailing meaning," *Claimant ID 100081155 v. BP Expl. & Prod., Inc.*, 920 F.3d 925, 931 (5th Cir. 2019) (quotations omitted). This is true even if the statutory interpretation involves a multi-word phrase. In that case, this Court's "dictionary-based analysis of the term is limited to combining two component definitions." *Easom*, 37 F.4th at 243. This Court will, however, "supplement [its] combined dictionary definition" of the relevant phrase using the "term's statutory context." *Id.* This Court has recognized, therefore, that while not dispositive, the meaning of individual words in

a multi-word phrase—here, "any sexual activity"—is helpful in determining the meaning of that phrase in the statute.

b.     Jimenez points to (Br.17-19) Black's Law Dictionary ("Black's") in support of his assertion. That dictionary does not directly define the term "sexual activity"; it instead refers the reader to the entry for "sexual relations." Black's 1379 (7th ed. 1999). "Sexual relations," in turn, is defined as "[s]exual intercourse" or as "[p]hysical sexual activity," both of which "'usu[ally] involve the touching of another's breast[], vagina, penis, or anus.'" Black's 1379.

As an initial matter, even assuming the definition in Black's is helpful, that definition does not state that "sexual activity" is strictly limited to physical contact between two people, as Jimenez suggests, but states only that it "usu[ally]" involves such contact. Black's 1379. Masturbation, for example, may well constitute "physical sexual activity" under that definition even though it does not involve the touching of "another's" body parts. *Id.*

More fundamentally, the dictionary uses the statutory term at issue here (*i.e.*, "sexual activity") as part of the definition of "sexual relations." *See* Black's 1379. But "'sexual relations' is not synonymous with 'sexual

activity'" because "[t]he latter is broader than the former; while 'sexual relations' suggests the involvement of another person, and ensuing interpersonal physical contact of some sort, 'sexual activity' does not.'" *Dominguez*, 997 F.3d at 1124 n.1. In any event, the modifier "physical" only serves to narrow the sort of "sexual activity" that constitutes "sexual relations." Black's 1379. If "physical" were part of the ordinary meaning of "sexual activity," no such modifier would be necessary. Accordingly, it would run contrary to the text of Section 2422(b) to define the broad phrase "*any* sexual activity" (18 U.S.C. § 2422(b) (emphasis added)) as "physical sexual activity."

Jimenez additionally cites to a number of other definitions in Black's, which he suggests "provide compelling evidence" that "'sexual activity' in 1998 almost always required interpersonal sexual contact." Br.18. But the definitions Jimenez cites cannot bear the weight he assigns them. For example, Jimenez notes that Black's defines "Beastiality" as "'Sexual activity between a human and an animal.'" Br.18 (quoting Black's at 153). But the inclusion of the phrase "between a human and an animal" shows only that "sexual activity" in this sentence refers to interpersonal physical contact, but not that the phrase requires

that contact. And he notes that Black's defines "Rape" as "'Unlawful sexual activity (esp. intercourse) with a person (usu. a female) without consent and usu. by force or threat of injury.'" Br.18 (quoting Black's at 1267). But if "sexual activity" necessarily required interpersonal physical contact, there would be no need for the definition of "Rape" to include the phrase "with a person," which under Jimenez's reading would be merely surplusage.

c.     Jimenez and amicus next contend that the use of corpus linguistics (to which Jimenez also adds Google Books and web-search data) shows that the plain meaning of "sexual activity" requires interpersonal physical contact. Br.19-32; Amicus Br.12-21. Jimenez's and amicus's use of these sources is flawed for several reasons.

i.     As an initial matter, although corpus linguistics and other linguistic repositories can be a useful tool to interpret statutory text, *see Cargill v. Garland*, 57 F.4th 447, 461 n.7 (5th Cir. 2023) (en banc), *aff'd*, 602 U.S. 406 (2024) (using corpus linguistics to provide further support for the meaning of a phrase), Jimenez and amicus's use of corpus linguistics to understand the meaning of the phrase "sexual activity" is fundamentally flawed.

The corpus-linguistics study carried out by Jimenez and amicus is unhelpful in determining the meaning of the phrase "sexual activity" in Section 2422(b) because it does not consider the partial definition in Section 2427, let alone pertinent contextual indicators such as the statute's entire text, structure, history, evident purpose, and common sense. *See, e.g.*, *United States v. Boler*, 115 F.4th 316, 325 n.5 (4th Cir. 2024) ("[C]ontext matters and legal corpus linguistics largely 'ignores the crucial contexts in which legal language is produced, interpreted, and deployed.' A survey of novels, magazines, newspapers, popular television shows and movies is no match for legal analysis of the text, structure, purpose and history of the actual regulation we are considering." (citation omitted)); *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 446 (6th Cir. 2019) (Stranch, J., concurring) ("[I]t is 'the "idiosyncrasies" of [Congress that] constitute the rule of law in this [country]. And the only way to identify those idiosyncrasies is through the text of the [U.S.] Code, which is wholly absent from [the corpus linguistics] data set.'").

Specifically, Jimenez and amicus's use of the corpus-linguistics analysis entirely ignores the fact that the phrase "sexual activity" is partially defined in Section 2427 to include activity that does not require

physical contact because it includes the production of child pornography. *See* pp.22-23, *supra*. And unlike the statute, many of the examples from the corpus-linguistics study and other online tools that Jimenez and amicus provide do not include the expansive term "any" before the phrase "sexual activity." *Compare* Br.23-25, *and* Amicus Br.14-16, *with* 18 U.S.C. § 2422(b). Jimenez and amicus have, moreover, failed to show how their conclusions gleaned from the corpus-linguistics analysis and Jimenez's other online searches comport with the statute's history or purpose.

ii.    In any event, contrary to Jimenez's and amicus's assertions, the corpus-linguistics analysis and other online searches do not prove that the phrase "sexual activity" in Section 2422(b) requires interpersonal physical contact.

Jimenez and amicus overstate the amount of certainty to be drawn from the corpus data. Many of the entries simply do not provide enough context to indicate that the meaning of the phrase "sexual activity" *necessarily* excludes all sexual conduct that does not involve interpersonal physical contact. To be sure, the analysis shows that "sexual activity" has been used to refer to conduct that involves interpersonal contact and thus includes conduct involving interpersonal

physical contact. *See* Br.23-25; Amicus Br.12-21. But the analysis does not show that the phrase *excludes* all conduct that does not involve such physical contact.

Indeed, even some of the examples Jimenez cites as supporting his claim fail to show that "sexual activity" necessarily requires interpersonal physical contact. For example, "Entry 125," which Jimenez notes states, "Why does sexual activity sometimes dwindle after marriage, and does it have to be that way," Br.24, provides no indication that the phrase "sexual activity" in that sentence excludes any reference to conduct that does not require interpersonal physical contact. Similarly, "Entry 48" states that "[the] White House said it had no knowledge of anyone claiming to have seen any sexual activity between Clinton and Lewinsky," Br.24, but this phrase also does not necessarily require that the phrase "any sexual activity" mean *only* conduct that incorporates interpersonal physical conduct.

The simple fact that the phrase "sexual activity" can refer to—or even often refers to—conduct that involves interpersonal physical contact does not require that the phrase refers to *only* that conduct. Like all words, legal phrases often bear multiple meanings. Which meaning the

phrase bears in a particular instance cannot be determined by the frequency of each meaning within a linguistic corpus. *See Wilson*, 930 F.3d at 445-46 (Stranch, J., concurring) (noting that relying on "the most frequently used meaning" risks "privileging the most newsworthy connotations of a term over its ordinary meaning"); *id.* at 441 (Thapar, J., concurring) ("Sometimes the most frequent use of a word will line up with its ordinary meaning as used in a statute. Sometimes it will not."). Instead, it must be determined based on the statue's text, structure, context, and purpose, all of which indicate that the phrase "sexual activity"—and particularly the pertinent phrase "any sexual activity"—in Section 2422(b) broadly includes conduct that does not require interpersonal contact.

Indeed, amicus concedes that "it's possible to use 'sexual activity' in a way that encompasses conduct not involving physical contact." Amicus Br.16. The question, however, is not whether "it's possible" that the phrase can be used that way, but whether Congress actually used it that way in Section 2422(b). It did, and the use of this phrase in other contexts is no reason to reject a meaning of that phrase that gives full effect to the

statute and corresponds with statutory text, structure, logic, purpose, and history.

d. No court has held that the offense conduct at issue here, a violation of 18 U.S.C. § 2251(a) & (e), does not qualify as "any sexual activity" under Section 2422(b). Moreover, three circuits more broadly agree that "sexual activity" as used in Section 2422(b) does not require interpersonal physical contact. *Jakits*, 129 F.4th 314 (6th Cir.); *Dominguez*, 997 F.3d 1121 (11th Cir.); *Fugit*, 703 F.3d 248 (4th Cir.). According to Jimenez, however, the Seventh Circuit's decision in *Taylor* supports his claim of evidentiary sufficiency here. *See* Br.33-34. Jimenez is mistaken.

As an initial matter, even the Seventh Circuit in *Taylor* agrees that the production of child pornography—which Jimenez attempted to engage in here—is properly considered "sexual activity" under Section 2422(b). *See Taylor*, 640 F.3d at 259. Because Jimenez's conduct falls within the partial definition of "sexual activity" as including the production of child pornography, *Taylor* actually undercuts Jimenez's contention. *See* pp.20-21, *supra*. Although the Seventh Circuit disagrees with some of the analysis of the other courts, the Seventh Circuit has not

ruled on the issue presented here involving whether Section 2251(a) & (e) qualifies as "sexual activity."

In any event, *Taylor* is wrong to hold that contactless conduct that falls outside the production of child pornography is not also properly considered "sexual activity" under Section 2422(b). *Taylor* recognized that "as a matter of ordinary usage, 'sexual activity' includes masturbation," 640 F.3d at 259, but it adopted Section 2246(2)'s definition of "sexual act" under the "rule of lenity," *id.* at 258, 259-60. Section 2246(2) defines "sexual act" as "contact between the penis and the vulva or the penis and the anus"; "contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus"; "the penetration, however slight, of the anal or genital opening" with a specified intent; or "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years" with a specified intent. 18 U.S.C. § 2246(2)(A)-(D). That specialized definition of "sexual act" is limited by its terms to "this chapter [*i.e.*, Chapter 109A]," 18 U.S.C. § 2246, which is not the chapter that contains Section 2422(b) (Chapter 117). Congress has expressly cross-referenced that definition of "sexual act" throughout the United States Code, including in a provision

neighboring Section 2422(b). *See, e.g.*, 18 U.S.C. § 2423(g); 20 U.S.C. §§ 7131(e)(8), 9134(f)(7)(E); 28 U.S.C. § 1346(b)(2); 47 U.S.C. § 254(h)(7)(H). But it did not do so for Section 2422(b). Because there is no "indication that Congress intended to import the definitions of chapter 109A" into Section 2422(b), the "sexual act" definition cannot be used to define the (distinct) term "sexual activity." *Fugit*, 703 F.3d at 256 (quotations omitted).

The definition of "sexual act" *Taylor* relies on is also incomplete. *Taylor* cites to only one part of the Section 2246(2) definition (*i.e.*, "the intentional touching, not through the clothing, of the genitalia of another person"), but that applies only if the child "has not attained the age of 16 years." 18 U.S.C. § 2246(2)(D). If the child is 16 years of age or older, the definition of "sexual act" requires more than interpersonal physical contact. And it would exclude the sorts of conduct that even Jimenez concedes is covered by Section 2422(b) such as, for example, the touching of another's breast, or even the touching of another's genitalia short of oral sex or actual penetration. Jimenez never explains why a definition of "sexual act" that is limited to children under the age of 16 would apply

to a different statute's use of the term "sexual activity" in a context that reaches all children under the "age of 18 years." 18 U.S.C. § 2422(b).

*Taylor* suggests that Section 2427, by "[e]xplicitly defining sexual activity to include producing child pornography," shows that the phrase sexual activity requires interpersonal physical contact because such a definition would be "needed only if the term 'sexual activity' requires contact, since the creation of pornography doesn't involve contact between the pornographer and another person." *Taylor*, 640 F.3d at 259. This reasoning, however, ignores the text and context of the statute discussed above. *See* pp.22-33, *supra*. It also ignores the fact that Congress may have expressly stated that the phrase sexual activity included child pornography not because the phrase had previously "mean[t] the opposite," *Breeding*, 109 F.3d at 311 (quotations omitted), but because Congress simply wanted "to clarify existing law," *Wesson*, 48 F.3d at 901 (quotations omitted). *See* pp.29-32, *supra*. But perhaps most importantly, *Taylor* misreads the plain text of Section 2427. As discussed above, Section 2427 explains that the phrase sexual activity "includes" conduct that does not require interpersonal physical conduct, and thus "connotes simply *an illustrative application* of the *general principle*."

*Bismarck Lumber Co.*, 314 U.S. at 100 (emphasis added). "[T]he word 'includes' is usually a term of enlargement, and not of limitation." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 527 (5th Cir. 2005) (quotations omitted). *Taylor* narrowly reads the word "includes" in Section 2427 as a term of limitation, and, accordingly, reaches an incorrect conclusion.

> 3. Even if any error exists, any such error was not plain.

Even if there were any error in the district court's finding Jimenez guilty of violating Section 2422(b), any such error was not plain. Jimenez's argument therefore fails because Jimenez has not attempted to show—nor could he show—that any such error was "clear or obvious." *United States v. Sanches*, 86 F.4th 680, 685 (5th Cir. 2023) (per curiam) (quotations omitted).

First, any error here was not plain because as discussed above, Jimenez's conduct fits comfortably within the meaning of the phrase "any sexual activity" when seen in light of the partial definition of the term sexual activity in Section 2427, *see* pp.18-21, *supra*, and in light of the plain meaning of the expansive phrase, *see* pp.22-33, *supra*. Jimenez offers no alternative definition of "sexual activity," short of one requiring interpersonal physical contact, under which he could possibly prevail. If,

contrary to Jimenez's contentions, "sexual activity" does not incorporate an invariable requirement of interpersonal physical contact—and it does not—Jimenez's conduct qualifies as attempting to persuade, induce, entice, or coerce MV-1 to engage in "any sexual activity" for which he could be prosecuted under any conceivable definition of that term. Jimenez attempted to have MV-1 produce an image of her shaved pubic area, which falls under Section 2427's definition of "sexual activity." And, more generally, Jimenez engaged in a highly sexualized conversation with MV-1, sending MV-1 multiple images of his penis and attempting to convince MV-1 to send him an image of her shaved pubic region. The district court did not clearly err in finding that this was "any sexual activity" under Section 2422(b).

Second, any error could not be clear or obvious because this Court "ha[s] never addressed whether" Section 2251(a) & (e) or any other conduct that does not require interpersonal physical contact "constitute[s] 'sexual activity for which any person can be charged with a criminal offense' under § 2422(b)." *United States v. Broussard*, 669 F.3d 537, 550-51 (5th Cir. 2012). Indeed, it does not appear that any court has ever held that a violation of Section 2251(a) & (e) does not qualify as "any

sexual activity" under Section 2422(b). And, to the extent that Jimenez claims there was any disagreement between *Taylor*, 640 F.3d 255, and any other circuit as to the meaning of the phrase "sexual activity," *see* Br.33-37, that only confirms that the district court's determination was not plainly erroneous. *See United States v. Salinas*, 480 F.3d 750, 759 (5th Cir. 2007) (no plain error when "this circuit's law remains unsettled and the other federal circuits have reached divergent conclusions").

Jimenez finally contends that his reading of the phrase "sexual activity" is required by the rule of lenity. Br.37-38. But that rule "comes into operation at the end of the process" of statutory interpretation, "not at the beginning as an overriding consideration of being lenient to wrongdoers." *Maracich v. Spears*, 570 U.S. 48, 76 (2013) (quotations omitted). It applies only if the criminal statute contains a "grievous ambiguity"—that is, only if, after applying all the traditional principles of statutory construction, a court "can make no more than a guess as to what Congress intended." *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (quotations omitted); *see Pulsifer v. United States*, 601 U.S. 124, 152-53 (2024) (recognizing that the rule of lenity does not apply if the statute is not "genuinely ambiguous"). This case creates no occasion for

such a guess, because the plain meaning of the phrase "sexual activity," particularly as elucidated by the illustrative definition in Section 2427, encompasses Jimenez's conduct even though that conduct did not require interpersonal physical contact. And to the extent that Jimenez argues that the rule of lenity is applicable, such an argument itself confirms that there is no plain error here. *See United States v. Ruiz-Gea*, 340 F.3d 1181, 1188 (10th Cir. 2003) ("When the choice between two possible meanings of a statute is so open to debate that the rule of lenity comes into play, one can hardly say that either interpretation is *plainly* wrong.").

Even if there were any error, therefore, such error was not "clear or obvious." *Sanches*, 86 F.4th at 685 (quotations omitted).

### D. Sufficient evidence supports the district court's finding that Jimenez attempted to persuade, induce, entice, or coerce MV-1 to engage in the lascivious exhibition of her genitals or pubic area.

Jimenez contends that there was insufficient evidence that the images he attempted to convince MV-1 to send him would have qualified as the lascivious exhibition of her genitals or pubic area. Br.40-61. His contention is meritless.

1. The evidence was sufficient to support Jimenez's conviction for attempting to persuade, induce, entice, or coerce MV-1 to engage in the lascivious exhibition of her genitals or pubic area.

a. To prove Count 1, the government had to prove that Jimenez "persuaded, induced, enticed, or coerced [MV-1] to engage in 'lascivious exhibition of [her] anus, genitals, or pubic area,'" or attempted to do so. ROA.164, 168 (quoting 18 U.S.C. § 2256(2)(A)(v)). A "lascivious exhibition" is a "depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *United States v. Wilkerson*, 124 F.4th 361, 369 (5th Cir. 2024) (quotations omitted), *petition for cert. filed*, No. 24-7115 (Apr. 29, 2025).

To prove an attempt, the government must generally prove that a defendant "(1) acted with the culpability required to commit the underlying substantive offense, and (2) took a substantial step toward its commission." *United States v. Olvera*, 687 F.3d 645, 647 (5th Cir. 2012) (per curiam) (quotations omitted). A "'substantial step' must be conduct that strongly corroborates the firmness of the defendant's criminal intent." *Howard*, 766 F.3d at 419.

To prove the attempted violation of Section 2422(b) charged in Count 1, therefore, the government needed to prove that Jimenez "[1] intended to persuade, induce, entice, or coerce a person whom he believed to be a minor to engage in criminal sexual conduct"—*i.e.*, the lascivious exhibition of her genitals or pubic area for the purpose of producing any visual depiction of such conduct—"and [2] 'took a substantial step toward that persuasion or enticement.'" *Broussard*, 669 F.3d at 547.

To determine whether a depiction qualifies as lascivious, this Court has adopted what is commonly referred to as the six *Dost*[6] factors: first, "whether the focal point of the visual depiction is on the child's genitalia or pubic area"; second, "whether the setting of the visual depiction is sexually suggestive—that is, in a place or pose generally associated with sexual activity"; third, "whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child"; fourth, "whether the child is fully or partially clothed, or nude"; fifth, "whether the visual depiction suggests sexual coyness or a willingness to engage in

---

[6] *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986).

sexual activity"; and sixth, "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Wilkerson*, 124 F.4th at 366. "These factors are not necessarily exhaustive, and no single factor is dispositive." *Id.* at 367.

b. Jimenez does not challenge the intent element of either an attempted or completed violation of Section 2422(b).[7] Instead, he challenges only the conduct element: he argues that, although he did try to request images from MV-1 of her pubic area, there is insufficient proof that the images he requested would have been "lascivious." Br.58-60. Jimenez is mistaken. The evidence here, seen in the light most favorable to the government, was more than sufficient to show that Jimenez took a substantial step towards seeking to convince MV-1 to send him a lascivious image of her shaved pubic area.

As the district court recognized, Jimenez engaged in a lengthy and sexually explicit conversation with MV-1. *See* pp.2-5, *supra*; *see United States v. Rounds*, 749 F.3d 326, 333 (5th Cir. 2014) ("Evidence can establish that a defendant intended to induce, persuade, entice, or coerce

---

[7] *See* Br.iv-v, 1, 7 (noting that Jimenez was convicted of attempting to violate Section 2422(b)).

a minor by sending the minor sexually explicit messages."). And Jimenez sent MV-1 several pictures of his penis. *See* p.9, *supra*. Jimenez thus engaged in "deliberate actions . . . to expose [MV-1] to sexual material" so that he could form "an emotional connection with" MV-1 and "reduc[e her] . . . inhibitions." *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011).

Indeed, during that lengthy and "graphic sexual" conversation with MV-1, ROA.160, Jimenez "directly and repeatedly requested that [MV-1] send pictures of her pubic area," ROA.168. These requests included that "[a]fter learning that [MV-1] had shaved her pubic area, Jimenez immediately responded, 'I have to see that . . . Babe plz,'" and that "[a]fter [MV-1] conceded to sending a clothed picture of herself, Jimenez renewed his request with specificity, asking about 'the pubic part too. That you shave,'" ROA.168. Jimenez sent several pictures of his penis to MV-1, and she had sent him several clothed pictures of herself in return. *See* p.9, *supra*. Thus, "[e]ach time Jimenez unambiguously requested a picture of [MV-1]'s genitals, he knew that [MV-1] might take action towards completing the request." ROA.169.

Nor was there any doubt that, when Jimenez requested these pictures, he was seeking not simply pictures depicting MV-1's genitals or pubic area but the lascivious exhibition of her genitals or pubic area. Jimenez repeatedly indicated that he wanted MV-1 to send him photos so that he could achieve sexual satisfaction. *See United States v. Isabella*, 918 F.3d 816, 834 n.17 (10th Cir. 2019) (a defendant's "explicit requests for 'naughty' and 'naked' photos were more than sufficient to infer specific intent to persuade [a minor] to send him child pornography"). For example, he told MV-1, "ur going to help me . . . [c]um," ROA.161, and similarly told her, "I need to cum so bad babe," and asked her, "tease me with a picture of something so I can cum," ROA.161. And he suggested that he would like to have sex with MV-1 when he asked her, "where do you want my cock to go in" and "you want it in your sweet little pussy or in that juic[y] ass." ROA.160; *see United States v. Musumeci*, 307 F. App'x 471, 473 (2d Cir. 2008) (unpublished) (noting that a jury could determine that the defendant intended to take lascivious photos in light of his "stated intention of engaging in sexual relations with [the minor], . . . and his stated belief that those pictures would sexually arouse him"). "The

repeated requests accompanied by explicit references to sex showed the kinds of photos [Jimenez] wanted." *Isabella*, 918 F.3d at 835-36.

There was more than sufficient evidence, therefore, to support the district court's finding that "Jimenez's requests were direct attempts to persuade, induce, entice, or coerce [MV-1] to engage in 'lascivious exhibition of the anus, genitals, or pubic area' for the 'purpose of producing any visual depiction' of the same." ROA.169.

2.    Jimenez's contrary arguments are unpersuasive.

a.    Jimenez asserts that this Court must use an "objective analysis" to determine "whether images are lascivious." Br.42. But this argument is inapposite because Section 2422(b) does not require the creation of any images, let alone lascivious ones.

Under Section 2422(b), whether any images produced were lascivious or whether his action produced any images at all is simply not relevant. The statute prohibits "knowingly persuad[ing], induc[ing], entic[ing], or coerc[ing]" a minor "to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense," or "attempt[ing] to do so." 18 U.S.C. § 2422(b). It thus "criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—

regardless of the accused's intentions vis-à-vis the actual consummation of sexual activities with the minor." *Howard*, 766 F.3d at 420 (quotations omitted). Therefore, the statute merely requires that Jimenez "persuade[], induce[], entice[], or coerce[]" MV-1 to produce an image of the lascivious exhibition of her genitals or pubic area, or "attempt[] to do so." 18 U.S.C. § 2422(b). Because Jimenez engaged in such conduct with the requisite mental state, he committed the offense whether or not any visual depiction was actually produced. *See United States v. Barlow*, 568 F.3d 215, 219 n.10 (5th Cir. 2009) ("To be clear, the statute does not require that the sexual contact occur, but that the defendant sought to persuade the minor to engage in that contact."); *cf. United States v. Johnson,* 639 F.3d 433, 439 (8th Cir. 2011) (noting that "the briefs' emphasis on whether or not the videotapes themselves are actually lascivious is somewhat misplaced" because "[t]he case was submitted to the jury only on an attempt theory").

Ultimately, therefore, it is irrelevant whether the photos MV-1 may have taken in response to Jimenez's requests would have actually been lascivious; it is only Jimenez's actions seeking to persuade, induce, entice, or coerce MV-1 to create a lascivious image, or attempting to do so, that

matters. *Cf. United States v. Boam*, 69 F.4th 601, 608 n.6 (9th Cir. 2023) ("To satisfy its burden for . . . attempted sexual exploitation under § 2251(a), the government needed only to prove beyond a reasonable doubt that [the defendant] intended to and took a substantial step toward producing lascivious videos."), *cert. denied*, 144 S. Ct. 1345 (2024). For the reasons explained above, *see* pp.53-56, *supra*, the evidence was more than sufficient to prove that Jimenez indeed took a substantial step towards convincing MV-1 to send him such an image.

Jimenez contends, citing to the *Dost* factors, that there was insufficient evidence to show that he sought a lascivious exhibition because his requests for MV-1 to provide images of her shaved pubic region did not include any specifications that would make the images "objectively lascivious." Br.40, 44, 58-60. Jimenez's argument is mistaken. As discussed above, *see* pp.2-5, 53-56, *supra*, Jimenez requested images of MV-1's shaved pubic region in the course of a highly sexualized conversation in which he sent MV-1 multiple pictures of his penis, and he indicated to MV-1 that he wanted her to send him photos so that he could "cum." ROA.161. These requests, considered in context and in the light most favorable to the government, provided sufficient

evidence for the district court's finding that Jimenez persuaded, induced, enticed, or coerced MV-1 to take a photo depicting the lascivious exhibition of her genitals or pubic area, or attempted to do so. *See United States v. Lundy*, 676 F.3d 444, 447 (5th Cir. 2012) (noting that a rational jury could have found that the defendant enticed a minor in light of the fact that he "made contact with and engaged in a string of sexually laced text message and phone conversations with a girl he thought to be 15 year[s] old").

Under those circumstances, the court "could readily infer that [Jimenez's] interest in [MV-1] was sexual, not sartorial or urological," *United States v. Hillie*, 38 F.4th 235, 241 n.1 (D.C. Cir. 2022) (per curiam) (Katsas, J., concurring in the denial of rehearing en banc), and that Jimenez was seeking a lascivious exhibition when he asked MV-1 to take the photos of her shaved pubic area. Any failure to convince MV-1 to capture such images would suggest only that his efforts were unsuccessful—not that he never tried.

b.    In any event, Jimenez's assertion that analysis of an image for lasciviousness must not be based on a defendant's intent, Br.42-45, lacks merit.

As discussed above, Jimenez's lengthy discussion of whether the lasciviousness of a depiction must be determined based on objective criteria is inapposite, because, first, there is no image here for this Court to analyze—objectively or otherwise—and, second, no such image is necessary for Jimenez to be found guilty of violating Section 2422(b). Even assuming that an image existed, however, Jimenez's argument would still fail. Although determining whether an image depicts sexually explicit conduct within the meaning of Section 2256(2)(A) is an objective inquiry, that objective inquiry does not foreclose the use of contextual evidence. The primary focus in evaluating the legality of an image turns on the "overall content of the visual depiction." *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986); *see also Wilkerson*, 124 F.4th at 369. But a factfinder may treat as relevant the surrounding circumstances and context to the extent that they provide evidence of a creator's intent to arouse sexual desire. *See, e.g.*, *United States v. Miller*, 829 F.3d 519, 526 (7th Cir. 2016); *United States v. Ward*, 686 F.3d 879, 884 (8th Cir.

2009); *United States v. Spoor*, 904 F.3d 141, 151 (2d Cir. 2018); *United States v. Brown*, 579 F.3d 672, 683-84 (6th Cir. 2009).[8]

This context is relevant because, although a violation of Section 2422(b) based on Section 2251 refers to depictions in which a minor "engage[s] in . . . any sexually explicit conduct," the focus of the statutory prohibition is on the defendant's behavior: the defendant must not "persuade[], induce[], entice [], or coerce[]" any minor to engage in such conduct. 18 U.S.C. § 2422(b). Indeed, because "lascivious" modifies "exhibition," "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for . . . himself or like-minded pedophiles." *United States v. Wells*, 843 F.3d 1251, 1255 (10th Cir. 2016) (brackets, quotations, and emphases omitted).

---

[8] Jimenez argues that the First, Second, and Third Circuits have held that contextual evidence cannot be consulted to evaluate whether a depiction is lascivious. Br.45-46. But the cases he cites indicate only that a jury analyzing lasciviousness must make that determination by examining the image itself. *See, e.g.*, *United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989). Other cases in those circuits note or suggest that contextual evidence can be consulted to evaluate whether a depiction is lascivious. *See United States v. Frabizio*, 459 F.3d 80, 89-90 (1st Cir. 2006); *United States v. Rivera*, 546 F.3d 245, 250 (2d Cir. 2008); *United States v. Larkin*, 629 F.3d 177, 184 (3d Cir. 2010).

The creation of an image or video for a particular purpose (here, sexual arousal) makes it more likely that the resulting image or video will be one that tends to achieve that purpose. Evidence of intent and surrounding circumstances can thus "help to place an image in context" and separate the production of innocent images from exploitative ones. *United States v. Russell*, 662 F.3d 831, 844 (7th Cir. 2011). Such context is particularly useful because "the type of sexuality encountered in pictures of children . . . often is imposed upon [the images] by the attitude of the viewer or photographer," rather than the subject, as children "are not necessarily mature enough to project sexuality consciously." *United States v. Arvin*, 900 F.2d 1385, 1391 (9th Cir. 1990).

Jimenez contends that in *Wilkerson*, 124 F.4th 361, this Court confused these principles. Br.47-50. Jimenez is incorrect. This Court clearly stated in *Wilkerson* that "[t]he question is not whether the viewer or maker of a visual depiction himself has a sexual response" to the image; rather, the question "is whether the purpose of producing the depiction and its design is to elicit such a response." *Wilkerson*, 124 F.4th at 371. Whether a depiction constitutes a lascivious exhibition of the genitals or pubic area of a child is a question for the factfinder, to be

determined using common sense, *see, e.g.*, *Miller*, 829 F.3d at 525, and therefore this Court in *Wilkerson* properly recognized that "[a] reasonable jury could conclude from" contextual indicators "that the purpose of creating the video, and its intended design, was to elicit a sexual response in the viewer," which bears on the objective case-specific question of whether images or videos contain a lascivious exhibition, *Wilkerson*, 124 F.4th at 371.[9]

Thus, Jimenez's repeated requests for MV-1 to send him a photo of her shaved pubic region in the context of his highly sexualized conversation with a minor, when seen in the light most favorable to the government, were sufficient to allow the district court to find that

---

[9] Jimenez contends (Br.44) that his position is supported by *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022), in which a divided panel of the D.C. Circuit, reviewing convictions under 18 U.S.C. §§ 2251 & 2252, viewed the phrase "lascivious exhibition" in Section 2256(2)(A)(v) to require the minor victim to display her "genitalia[] or pubic area in a manner connoting that the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in any type of sexual activity." *Id.* at 685 (emphasis omitted). But even in the D.C. Circuit, conduct of the type found here would be sufficient to support a conviction for attempt, which does not turn on the actual image produced. *See Hillie*, 38 F.4th at 241 n.1 (Katsas, J., concurring in the denial of rehearing en banc).

Jimenez attempted to persuade, induce, entice, or coerce MV-1 to send him a lascivious image of her genitals or pubic area.[10]

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's judgment.

Respectfully submitted,

NICHOLAS J. GANJEI
    United States Attorney
    Southern District of Texas

MATTHEW R. GALEOTTI
    Head of the Criminal Division

/s/ Javier A. Sinha
JAVIER A. SINHA
    Attorney, Appellate Section
    Criminal Division
    U.S. Department of Justice
    950 Pennsylvania Ave. NW,
    Suite 1264
    Washington, DC 20530
    (202) 353-1787
    javier.sinha@usdoj.gov

---

[10] Jimenez asserts that his sufficiency-of-the-evidence challenge is supported by the rule of lenity. For the reasons discussed above, *see* pp.49-50, *supra*, he is mistaken.

# CERTIFICATE OF SERVICE

I certify that on May 28, 2025, I caused the foregoing brief to be served upon the Filing Users identified below through the Court's Case Management/Electronic Case Files ("CM/ECF") system:

Mark Yanis
2151 Pacific Ave.
Costa Mesa, CA 92627
(949) 769-4872

*Attorney for Defendant-Appellant George Jimenez*

/S/ JAVIER A. SINHA____
JAVIER A. SINHA
U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave., NW, Suite 1264
Washington, DC 20530
TEL 202.353.1787/FAX 202.305.2121
javier.sinha@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,752 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced, 14-point font in text and footnotes using Microsoft Word for Office 365.

3.      This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a) because it contains no personal data identifiers.

4.      The digital version electronically filed with the Court on this day is an exact copy of the written document to be sent to the Clerk.

5.      This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security, which is continuously updated, and according to that program, is free of viruses.

/s/ JAVIER A. SINHA
JAVIER A. SINHA
U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave., NW, Suite 1264
Washington, DC 20530
TEL 202.353.1787/FAX 202.305.2121
javier.sinha@usdoj.gov